IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH HOLLINS, | ) | CASE NO. 3:12-CV-1423 |
| | ) | |
| Petitioner, | ) | JUDGE GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| DEB TIMMERMAN-COOPER, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the Court is the petition of Kenneth Hollins ("Hollins") for a writ of habeas corpus

filed pursuant to 28 U.S.C. § 2254.  Hollins is in the custody of the Ohio Department of

Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State*

*of Ohio vs. Hollins*, Case No. 2009-CR- 257 (Hancock County December 2, 2009).

(12/2/2010 Judgment Entry, Doc. No. 8-1 at Ex. 9.)  For the reasons set forth below, it

is recommended that Hollins's petition be dismissed with prejudice.

### I. Factual Background

Hollins was arrested on December 12, 2009, after Ohio State Highway Patrol

Trooper Jacob Fletcher discovered heroin in the trunk of a rental vehicle in which

Hollins was a passenger.  *See State v. Hollins*, No. 5-10-41, 2011 WL 5142979 at *1

(Ohio App. Ct. Oct. 31, 2011).  Trooper Fletcher had initiated a traffic stop of the vehicle

on I-75 after determining that it was traveling in excess of the speed limit.  *Id.*

## II. State Procedural History

**A.    Trial Court Proceedings**

**1.    Indictment and Arraignment**

On December 15, 2009, a Hancock County grand jury issued an indictment charging Hollins with one count of possession of a controlled substance, to wit: Heroin in an amount that equals or exceeds 250 grams.[1] (Indictment, Doc. No. 8-1 at Ex. 1.) On December 23, 2009, Hollins pleaded not guilty to the single count in the indictment. (Arraignment, Doc. No. 8-1 at Ex. 2.)

**2.    Motion to Suppress**

Thereafter, Hollins, through counsel, filed a motion to suppress the heroin discovered in the trunk of the vehicle, arguing that Trooper Fletcher had unnecessarily extended the duration of the traffic stop in order to conduct a more intrusive search for which he had no probable cause. (Motion to Suppress, Doc. No. 8-1 at Ex. 3; Supplemental Brief in Support, Doc. No. 8-1 at Ex.4.)

After a June 2010 hearing (Hearing Transcript, Doc. No. 8-2), the state trial court made the following findings of fact:

> On Dec[ember] 12, 2009 at 3:47 pm, Defendant Hollins was a passenger in a vehicle stopped for speeding near milepost 153 on Interstate 75 in Hancock County. Trooper Fletcher checked the vehicle's speed by lazer [*sic*] and found it to be traveling at seventy-four (74) mph in a sixty-five (65) mph zone. During the course of this stop, Trooper Fletcher asked for the driver's license and registration. The driver was

---

[1] The grand jury further specified that Hollins was a major drug offender, pursuant to Ohio Rev. Code § 2941.1410. (Indictment, Doc. No. 8-1 at Ex. 1.) Thereafter, the state trial court dismissed the specification on the State's motion. (9/07/2010 Motion and Order, Doc. No. 8-1 at Ex. 6.)

2

identified as Darrell Hollins. The driver gave Trooper
Fletcher a valid Michigan driver's license and a rental
agreement. The rental agreement did not list the driver as a
permissible driver and listed only Troy Kyles as a
permissible driver. Trooper Fletcher then asked Darrell
Hollins to exit the vehicle. Upon exiting the vehicle, the driver
consented to being frisked. No contraband was found on the
person of Darrell Hollins and he was placed in Trooper
Fletcher's vehicle while the defendant remained in the rental car.

Trooper Fletcher then asked Darrell Hollins about his travel
destination. Darrell Hollins responded that he was driving
from Detroit to Dayton with his brother, the defendant
Kenneth Hollins, to pick up his cousin, and that he had been
in Dayton the night before. Trooper Fletcher then requested
that a canine unit report to the site of the traffic stop and that
the post dispatcher contact the Avis car rental company to
determine if a non-listed driver was permitted to operate the
vehicle. It is unclear which of those two actions took place
first. However, the CAD Log, State's Exhibit 2, (which only
keeps a record of when the Dispatcher types the Officer's
actions into the computer – *not* when the actions actually
occurred,) lists the request for a canine unit at 3:51 pm and
the request for clarification from Avis at 3:59 pm.

Trooper Fletcher then returned to the stopped vehicle to
question the defendant Kenneth Hollins. When asked his
travel destination, defendant replied that he was traveling to
pick up his cousin but that the driver had not been in Dayton
the night before. Trooper Fletcher then returned to his
cruiser to verify the driver's statements that he had been in
Dayton the night before. The driver again said he was in
Dayton the previous night.

At 4:04 pm, according to the CAD Log, Trooper Fletcher was
informed that neither the driver nor the defendant was
permitted to drive the vehicle under the Avis rental
agreement. (Again, the CAD Log only represents when the
dispatcher logged the occurrence in the computer, not the
actual time it occurred.) According to the CAD Log, the
canine unit arrived on scene no later than 4:05 pm – 18
minutes into the traffic stop.

The canine then was walked around the motor vehicle and
alerted on the stopped vehicle while defendant was still in

3

the passenger seat. Defendant was then ordered out of the vehicle and a plastic bag of green, leafy substance was found on his person. In a subsequent search of the vehicle, Trooper Fletcher found a plastic bag containing what appeared to be heroin, in the trunk of the rental car.

\* \* \*

During the traffic stop at hand, Trooper Fletcher was given a rental agreement that did not list the driver as being allowed to operate the vehicle. Also, there was no attachment or addendum on the agreement indicating the driver was permitted to operate the vehicle. In addition, the patrol post dispatcher had given Trooper Fletcher no indication that Avis Car Rental had verified that the driver was permitted to drive the rental vehicle. As such, Trooper Fletcher was being "reasonable and diligent" by investigating whether the driver was allowed to be operating the vehicle. The CAD Log shows Trooper Fletcher requested dispatch to contact the rental car agency no later than 3:59 pm. Furthermore, no later than 4:04 pm, Trooper Fletcher was told that the driver was not permitted to drive the rental vehicle. Trooper Fletcher also testified that, while stops to issue a warning involving the owner of the car take eight to ten minutes, stops where the vehicle owner is not present vary greatly in length. Trooper Fletcher further testified that, throughout the stop, he was conducting checks of the defendant's driver's license and identity in addition to waiting to see if the driver was permitted to drive the rental vehicle.

\* \* \*

Defendant, through counsel, contends that an Avis representative told the dispatcher that co-workers are permitted to drive a vehicle rented under a corporate policy. Defendant also contends that he and the driver were employees of the corporation under which the car was rented. Regardless of Avis' actual policy, there is no evidence that such information was passed along to Trooper Fletcher. Furthermore, Defendant's Exhibit C, an e-mail from an Avis representative, explains that for employees to drive a rental car under a corporate account, the "corporate AWD number" must be printed on the rental agreement. Troy Kyles' AWD number, identified on Defendant's Exhibit D as "Z391037," is nowhere to be found on the rental agreement.

4

> There is also no evidence that the rental agreement can be identified as under a corporate policy, as it only listed the name "Troy Kyles" as a driver, not a corporation.

(8/09/2012 Judgment Entry at 3-6, Doc. No. 8-1 at Ex. 5 at 3-6.)  The state trial court determined that, because "Trooper Fletcher's investigation during the traffic stop was reasonable and diligent, the extension of the traffic stop had not been unconstitutionally prolonged at the time of the canine sweep." (*Id*. at 7.)

**3.    Plea and Sentencing**

On September 7, 2010, Hollins changed his plea to no contest.  (9/07/2010 Journal Entry, Doc. No. 8-1 at Ex. 8.)  On December 2, 2010, the state trial court sentenced Hollins to a nine-year term of imprisonment, followed by five years of post-release control.  (12/02/2012 Journal Entry, Doc. No. 8-1 at Ex. 9.)

**B.    Direct Appeal**

On December 27, 2010, Hollins, through counsel, filed a timely notice of appeal from the state trial court's judgment.  (12/27/2010 Notice of Appeal, Doc. No. 8-1 at Ex. 10.)  On appeal, he raised the following assignments of error:

> I.    The court of common pleas committed reversible error when it denied [Hollins's] motion to suppress a quantity of heroin that was seized by the highway patrol during a warrantless search of the locked trunk of a vehicle in which he was a passenger, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

> II.    Defense counsel's failure to challenge the highway patrol trooper's extension of the scope of the search from the passenger compartment to the locked trunk of the vehicle deprived [Hollins] of his Sixth and Fourteenth Amendment right to the effective

assistance of counsel.

(Appellate Brief, Doc. No. 8-1 at Ex. 11.)  With respect to the first assignment of error,

Hollins argued that Trooper Fletcher's search of the rental vehicle was unconstitutional

because it was the result of an unconstitutionally prolonged detention, and because the

canine alert on the passenger compartment of the vehicle did not give Trooper Fletcher

probable cause to search the trunk.  *Id*.

On October 31, 2011, the state appellate court affirmed the judgment of the trial

court.  *See Hollins*, 2011 WL 5142979.  As an initial matter, to the extent that Hollins

challenged "the scope of the search below," rather than the duration of the stop, the

court declined to consider the issue because Hollins did not raise the issue in the trial

court.  *Id*. at *7.  With respect to Hollins's argument that Trooper Fletcher had

unconstitutionally prolonged the traffic stop, the appellate court concluded that Trooper

Fletcher's investigation of the rental agreement "was reasonable and not outside the

initial investigative scope of the stop."  *Id*. at *8, *10 (citing *State v. Batchili*, 865 N.E.2d

1282, 113 Ohio St.3d 403 (Ohio 2006).)  Further, the court noted that, "[s]everal

minutes [after Trooper Fletcher requested that his dispatcher contact Avis], Trooper

Fletcher was advised that Avis wanted the vehicle to be detained, as neither Darrell nor

[Hollins] was authorized to operate the vehicle."  *Id*.  The court reasoned that,

thereafter, any further detention of Hollins was inconsequential in determining the

constitutionality of the stop:

> The moment Trooper Fletcher was informed that Avis
> wanted the vehicle to be detained, further detention of the
> vehicle and its occupants became inconsequential in
> determining whether the duration of the stop was
> unconstitutionally prolonged.  The moment Trooper Fletcher

6

> was informed that Avis wanted the vehicle to be detained
> Darrell and [Hollins] were no longer being seized based
> solely on the initial traffic violation or Trooper Fletcher's
> suspicions.  Rather, Darrell and [Hollins's] continued
> presence was the result of the owner's request to detain the
> vehicle, and as such their continued presence no longer
> implicated the Fourth Amendment.  Consequently, the fact
> that the canine unit arrived one minute after Trooper
> Fletcher had completed his background checks of Darrell's
> license, the vehicle's registration, and the rental agreement
> bears no consequence in determining whether the duration
> of the stop was unconstitutionally prolonged.

*Id*. at *11.  Because Trooper Fletcher "did not prolong the detention any longer than

necessary to effectuate the initial purpose of the stop," Hollins "was not

unconstitutionally seized at the moment the canine alerted to the vehicle, which gave

Trooper Fletcher probable cause to search the vehicle."  *Id*.

The state appellate court also rejected Hollins's claim that he received ineffective

assistance of counsel when his trial counsel failed to challenge the extension of the

search from the passenger compartment to the trunk.  *Id*. at *12.  The court concluded

that any such challenge would have failed because, as a passenger in a vehicle, Hollins

lacked standing to challenge the search of the vehicle and its contents.  *Id*.

**C.**    **Proceedings in the Ohio Supreme Court**

On December 15, 2011, Hollins filed a notice of appeal and a memorandum in

support of jurisdiction in the Ohio Supreme Court.  (12/15/ 2011 Notice of Appeal, Doc.

No. 8-1 at Ex. 18; Memorandum in Support of Jurisdiction, Doc. No. 8-1 at Ex. 19.)  He

raised the following propositions of law:

> I.      An investigation into the contractual rights of the
>         driver under a standard rental agreement does not
>         qualify as a routine "background check" that will justify

7

the detention of the vehicle and its occupants
following a traffic stop within the meaning of [*Batchili*].

II.    A passenger in a motor vehicle rented by an absent
third party has a reasonable expectation of privacy in
its contents and standing to challenge the scope of a
warrantless search if the evidence demonstrates he
had consent of the third party renter to use the
vehicle.

III.   A defense attorney renders ineffective assistance in
violation of his client's Sixth and Fourteenth
Amendment rights when he fails to challenge the
expansion of a search from the passenger
compartment to the trunk of a vehicle on the grounds
that a trunk and a passenger compartment are
subject to different standards of probable cause.

(Memorandum in Support of Jurisdiction, Doc. No. 8-1 at Ex. 19.)

On March 7, 2012, the Ohio Supreme Court denied Hollins leave to appeal and

dismissed his appeal "as not involving any substantial constitutional question."

(3/07/2012 Entry, Doc. No. 8-1 at Ex. 23.)

### III. Proceedings in This Court

On June 6, 2012, Hollins, *pro se*, filed his § 2254 petition in this Court.  (§ 2254

Petition, Doc. No. 1.)[2]  He reiterates the claims he raised in his Memorandum in

Support of Jurisdiction filed in the Ohio Supreme Court.  (Memorandum in Support,

Doc. No. 1-1.)  The State has filed a Return of Writ (Doc. No. 8), and Hollins has filed a

response (Doc. No. 11).  Accordingly, the § 2254 petition is ready for review.

---

[2]    The State does not dispute that Hollins's petition is timely.  His conviction was
final, for purposes of § 2254, on June 5, 2012 – ninety days after the Ohio
Supreme Court denied his direct appeal on March 7, 2012.  *See* 28 U.S.C. §
2244(d)(1).  Because he filed his § 2254 petition within one year of that date, the
petition is timely.

## IV. Procedural Issues

**A.     Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The Court of Common Pleas of Hancock County, Ohio sentenced Hollins.  (12/02/2012 Journal Entry, Doc. No. 8-1 at Ex. 9.)  Hancock County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over Hollins's petition.

**B.     Non-Cognizable Claims**

Hollins's first two claims assert that the state trial court violated his Fourth Amendment rights by denying his motion to suppress the evidence seized as a result of Trooper Fletcher's search.  It is well established that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence [used against him was] obtained in an unconstitutional search or seizure."  *Stone v. Powell*, 428 U.S. 465, 495 (1976); *see Lawrence v. 48th Dist. Court*, 560 F.3d 475, 483, n.7 (6th Cir. 2009) ("Ordinarily, we do not recognize Fourth Amendment claims in Section 2254 actions if the state proceedings provided the petitioner a full and fair opportunity to litigate that claim.").  Courts conduct a two-part inquiry to determine whether a habeas petitioner received a full and fair opportunity to litigate a Fourth Amendment claim, asking, first, "whether the state procedural mechanism, in the abstract, presents the

9

opportunity to raise a fourth amendment claim," and, second, "whether presentation of that claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray, 674 F.2d 522, 526 (6th Cir. 1982)*.

Here, Hollins does not assert that he was precluded from fully and fairly litigating his Fourth Amendment claims in state court.  Further, the record would not support any such assertion.  With respect to the first prong of the inquiry, there is no dispute that Ohio's Criminal Rule 12 "provides an adequate opportunity to raise fourth amendment claims in the context of a pretrial motion to suppress." *Riley, 674 F.2d at 526*.  With respect to the second prong of the inquiry, the record reveals that Hollins filed a motion to suppress under Rule 12 of the Ohio Rules of Criminal Procedure, that the trial court held a hearing on that motion, and that the state appellate court reviewed Hollins's Fourth Amendment claims.  Accordingly, Hollins received a full and fair opportunity to litigate his claims in state court.

Hollins argues that the holding of *Powell* was abrogated by the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which altered numerous statutes related to federal habeas corpus review.  Hollins notes that, under AEDPA, § 2254 permits habeas relief on the basis of a state court decision that is "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d).  According to Hollins, because these are the only limitations to relief set forth in § 2254(d), the language of that section reflects a Congressional intent to supersede *Powell* and permit the review of Fourth Amendment claims.  Hollins's argument lacks merit.

As a preliminary matter, Hollins points to no legal authority to support his

assertion that, in enacting AEDPA, Congress intended to abrogate the well-established

holding of *Powell*.  This Court is not aware of any such authority.  Indeed, after the

enactment of AEDPA, federal courts continued to consistently apply the holding of

*Powell* to preclude § 2254 review of Fourth Amendment claims.  *See, e.g., Cobb v.*

*Thaler*, 682 F.3d 364, 375 (5th Cir. 2012); *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir.

2012) ("Long-standing precedent precludes us from granting habeas relief based on a

state court's failure to apply the exclusionary rule of the Fourth Amendment . . . .")

(citing *Powell*, 428 U.S. at 494); *Mason v. Allen*, 605 F.3d 1114, 1120 (11th Cir. 2010)

("We find that [*Powell*] precludes our consideration of" the petitioner's Fourth

Amendment arguments).

Further, Hollins's argument fails to address the reasoning of the Supreme Court

in *Powell*, which concluded that the benefit of allowing habeas corpus review of Fourth

Amendment claims did not justify the potential cost of such review:

> Application of the [exclusionary] rule . . . deflects the
> truthfinding process and often frees the guilty.
>
> *   *   *
>
> Evidence obtained by police officers in violation of the
> Fourth Amendment is excluded at trial in the hope that the
> frequency of future violations will decrease. Despite the
> absence of supportive empirical evidence, we have
> assumed that the immediate effect of exclusion will be to
> discourage law enforcement officials from violating the
> Fourth Amendment by removing the incentive to disregard it.
>
> *   *   *
>
> We adhere to the view that these considerations support the
> implementation of the exclusionary rule at trial and its
> enforcement on direct appeal of state-court convictions. But

11

> the additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs.

*Powell*, 428 U.S. at 489-90.  Hollins does not explain how AEDPA's requirements for federal collateral review of state court claims address the concern described by the Court in *Powell*.  Accordingly, Hollins's argument offers no basis for this Court to review his Fourth Amendment claims, and it is recommended that they be dismissed.

### V. The Merits of Hollins's Remaining Claim

AEDPA altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (quoting 28 U.S.C. § 2254(d)(1) (emphasis in original).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).  This Court applies this deferential standard of review to the state courts' rulings on Hollins's third ground for relief.

In his third ground for relief, Clementson argues that he received ineffective assistance of counsel when his trial counsel failed to challenge Trooper Fletcher's expansion of the search from the passenger compartment to the locked trunk of the rental vehicle, on the ground that a different standard of probable cause applied to each area of the vehicle.  In assessing claims of ineffective assistance of counsel, courts

13

apply the familiar standard of _Strickland v. Washington_, 466 U.S. 668 (1984), which

requires a petitioner to demonstrate both that his counsel's performance was deficient,

and that the allegedly ineffective assistance caused him prejudice:

> A convicted defendant's claim that counsel's assistance was
> so defective as to require reversal of a conviction or death
> sentence has two components. First, the defendant must
> show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant
> must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable. Unless a defendant makes both
> showings, it cannot be said that the conviction or death
> sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

_Strickland_, 466 U.S. at 687.  "Both the performance and prejudice components of the

ineffectiveness inquiry are mixed questions of law and fact entitled to _de novo_ review."

_Combs. v. Coyle_, 205 F.3d 269, 278 (6th Cir. 2000).

Here, in deciding Hollins's ineffective assistance claim, the state appellate court

cited to Ohio law setting forth the _Strickland_ standard for reviewing such claims.  _See_

_Hollins_, 2011 WL 5142979 at *11 (citing _State v. Bradley_, 538 N.E.2d 373, 42 Ohio

St.3d 136 (Ohio 1989))  Hollins argues that the state court misapplied _Strickland_ and

erred in denying his claim because his trial counsel was deficient in failing to challenge

Trooper Fletcher's decision to expand his search of the vehicle from its passenger

compartment to its trunk.  To support his argument, Hollins cites to numerous cases

discussing the extent to which an officer's reasonable suspicion that there is

contraband in one area of a vehicle permits that officer to search other areas of that

14

vehicle.

Hollins's argument lacks merit.  Rather than address the question whether Trooper Fletcher had sufficient probable cause to search the trunk of the rental vehicle, the state appellate court appropriately focused on the second prong of the *Strickland* inquiry – whether the alleged error caused Hollins prejudice – and determined that Hollins could not show the requisite prejudice:

> A motion challenging the scope of the search would not have been successful, as [Hollins] lacked standing to challenge the same.  It is well established that a passenger of a vehicle does not have standing to challenge the search of the vehicle and its contents.  Here, [Hollins] was a passenger in a rental vehicle that was rented by an absent third party.  The record is devoid of any evidence that [Hollins] had a proprietary or possessory interest in the vehicle, and [Hollins] advances no arguments establishing the same.  Consequently, trial counsel was not ineffective, as a motion challenging the scope of the search would have failed for lack of standing.

*Hollins*, 2011 WL 5142979 at * 12 (internal citations omitted); *see Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.")

In his response, Hollins argues that the United States Supreme Court's decision in *Brendlin v. California*, 551 U.S. 249 (2007), required the state appellate court to conclude that he was prejudiced by counsel's decision not to raise the scope of the search in his motion to suppress.  In that case, the Supreme Court determined that the defendant, a passenger in a vehicle that was the subject of a traffic stop, had standing to challenge the constitutionality of the stop.  The Court reasoned that "a traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the

15

driver, diverting both from the stream of traffic to the side of the road, and the police activity that normally amounts to an intrusion on privacy and personal security does not normally (and did not here) distinguish between passenger and driver." 551 U.S. at 257.

The Court's decision in *Brendlin*, however, does not lend merit to Hollins's argument.  In this case, the state appellate court determined that Hollins lacked standing to challenge the search of a vehicle in which he was a passenger, not the initial traffic stop.  In *Brendlin*, the passenger sought to challenge the constitutionality of the traffic stop itself, not the subsequent search.  *See id*. at 253 (noting that the defendant "did not assert that his Fourth Amendment rights were violated by the search of [the driver's vehicle], but claimed that the traffic stop was an illegal seizure of his person"). No other court has extended *Brendlin* to hold that a passenger in a vehicle has standing to challenge a search of that vehicle.  Rather, it remains well settled that, where a passenger has neither a property nor a possessory interest in an automobile, that passenger lacks standing to challenge the constitutionality of a search of that automobile.  *See Rakas v. Illinois*, 439 U.S. 128 (1978).  Accordingly, the state court's determination that Hollins was not prejudiced by his counsel's alleged error in this context was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and Hillons's third ground for relief should be dismissed as without merit.

## VI. Conclusion

For the reasons given above, Hollins's petition should be dismissed with prejudice.


Date: April 4, 2013                              /s/ Nancy A. Vecchiarelli
                                                 United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

17